397 So.2d 305 (1980)
Jerome ROTSTEIN, M.D., Appellant,
v.
DEPARTMENT OF PROFESSIONAL AND OCCUPATIONAL REGULATION, State Board of Medical Examiners of Florida, Appellee.
No. OO-426.
District Court of Appeal of Florida, First District.
July 24, 1980.
On Rehearing March 11, 1981.
Gary M. Farmer of Abrams, Anton, Robbins, Resnick, Schneider & Mager, Hollywood, Sam Spector of Spector & Tunnicliff, Tallahassee, for appellant.
*306 Deborah J. Miller, Dept. of Professional Regulation, and Joseph W. Lawrence, II, Asst. Atty. Gen., Tallahassee, for appellee.
ROBERT P. SMITH, Jr., Judge.
We affirm the order of the State Board of Medical Examiners revoking the license of appellant Rotstein to practice medicine in Florida. The ground on which discipline was sought and on which revocation was ordered is that Dr. Rotstein was convicted of willfully making a false statement to an agency of the United States, in violation of Title 18 U.S.C., Section 1001.[1] Under Section 458.1201(1)(c), Florida Statutes (1977), it was a ground for discipline of a licensed medical doctor that the licensee was
... convicted of a felony in the courts of this state or any other state, territory, or country. Conviction as used in this paragraph shall include a conviction of an offense which if committed in this state would be deemed a felony without regard to its designation elsewhere... .
The offense for which Dr. Rotstein was convicted, on his plea of guilty in the United States District Court for the Southern District of New York, is a felony under federal law. As such, the conviction was grounds for discipline under the Florida statute because the offense was a felony under the laws of a "country," the United States, referred to in the statute. Section 458.1201(1)(c) contemplated that "any other state, territory, or country" included the United States. We reject the argument that an offense made a felony by the United States Code, but not by Florida Statutes, could not constitute grounds for discipline. The statute does not exclude from consideration felony convictions under out-of-state laws more far-reaching than Florida's; rather, the statute "includes" out-of-state misdemeanor convictions which under Florida law would constitute felony convictions. In Re Weathers, 159 Fla. 390, 31 So.2d 543 (Fla. 1947) is not to the contrary; that decision construed Section 458.12(2), Florida Statutes (1941), requiring that the out-of-state conviction, constituting the basis for discipline, be for a crime "which if committed within the state of Florida would constitute a felony under the laws thereof." Section 458.1201(1)(c) was not similarly restrictive.
Appellant urges that the disciplinary proceedings were flawed by the Board's failure to comply with Section 120.60(6), requiring, "prior to the institution of agency proceedings" for license discipline, that notice and an opportunity to show compliance be accorded the licensee. Appellant did not urge this before the Board at any time, and the point is waived. Sheppard v. Board of Dentistry, 385 So.2d 143 (Fla.1st DCA 1980). Appellant also urges that the Board lost jurisdiction by its failure to enter a final order within 90 days after service of the hearing officer's recommended order. Section 120.59(1)(b), Florida Statutes (1979). The Board, which reviewed the entire record after initially hearing the case, entered its order some two weeks beyond the 90-day schedule. No prejudice was shown before the Board at its final hearing, which was also held beyond the 90-day schedule, and no particular prejudice is suggested here. The delay in filing the final order does not, therefore, vitiate the proceedings. Jess *307 Parrish Mem. Hosp. v. Florida Pub. Empl. Relations Comm'n, 364 So.2d 777 (Fla. 1st DCA 1978).
Appellant's final point is that the revocation of his license constitutes "cruel and unusual punishment" in violation of the State and Federal Constitutions. Appellant has not sustained this constitutional claim and, absent any contention concerning the regularity of the Board's review of the record to fix a penalty or otherwise concerning the Board's exercise of discretion according to Florida Real Estate Comm'n v. Webb, 367 So.2d 201 (Fla. 1978),[2] it is inappropriate for this court to inquire further into the manner in which the Board exercised and explained its discretion to revoke appellant's license. The revocation order is
AFFIRMED.
ERVIN, J., concurs.
WENTWORTH, J., dissents with opinion.
WENTWORTH, Judge, dissenting.
I respectfully disagree with the court's disposition of this appeal. After appellant pleaded guilty to the federal offense of willfully making a false statement to an agency of the United States, 18 U.S.C. § 1001, the Department of Professional and Occupational Regulation, State Board of Medical Examiners of Florida, instituted disciplinary proceedings and appellant was granted a § 120.57, Florida Statutes, hearing. At this administrative hearing appellant presented evidence indicating that he was guilty of a technical violation of 18 U.S.C. § 1001, but that his conduct was of the character which, while malum prohibitum, was not malum in se. The hearing officer made numerous findings reflecting favorably upon appellant's professional competence and integrity and recommended that appellant be placed on probation. The Board thereafter accepted the hearing officer's findings but revoked appellant's professional license, noting that the offense of which the appellant was convicted was "of a very serious nature."
In Florida Real Estate Commission v. Webb, 367 So.2d 201 (Fla. 1978), the Florida Supreme Court determined that where an agency, within its discretion, imposes a penalty prescribed by law, a reviewing court may not overturn the penalty except where the agency's findings are also overturned. Webb also establishes that upon review of the entire record an agency may increase a recommended penalty without explaining its rationale for the increase. However, as was indicated in McDonald v. Department of Banking & Finance, 346 So.2d 569 (Fla. 1st DCA 1977), judicial review proceedings under § 120.68, Florida Statutes, seek crystallization of agency discretion, and to the extent that agency action depends on non-rule policy, the agency's duty of exposition increases. In quoting from the reporter's comments on the proposed administrative procedure act, the court in McDonald noted that:
Three due process checks to prevent arbitrary agency action are the requirements that reasons be stated for all action taken or omitted, that reasons be supported by `the record,' and that specific judicial review procedures allow the courts to remedy defects of substance.
*308 The McDonald court further noted that judicial review aims not at displacing agency discretion but at requiring, as a condition of its exercise, a reasoned explanation.
While Webb indicates that an agency may increase a recommended penalty without explanation, where an explanation is given I would apply McDonald and require that the explanation be supported by record evidence and sufficiently particularized so as to elucidate the agency's rationale. Such a requirement accords with due process of law as guaranteed by Art. I, § 9, Florida Constitution, and provides the opportunity for meaningful judicial review of an agency's explanation of its discretionary action. In the present case the conclusory statement that appellant's offense was of a "very serious nature" is not particularized or substantiated by any reference to record evidence, and my study of the record does not clarify but instead compounds the problem because of the highly prejudicial nature of documentary exhibits forwarded with the record but never introduced into evidence. The Board's order does not reveal the factors considered, or the basis of its conclusion, regarding the "serious nature" of the offense. To the extent that the Board may have disbelieved appellant's explanation of the offense (contrary to the apparent acceptance of that explanation which necessarily inheres in the hearing officer's findings and recommended lesser penalty), § 120.57(1)(b)9, Florida Statutes, would require a more specific and particularized statement by the full Board than that given in the present case. In my opinion, the circumstances require that the cause be remanded to the Department pursuant to § 120.68(12)(c), Florida Statutes.
Without deciding the issue addressed by the majority as to whether § 458.1201(1)(c), Florida Statutes, uses the word "include" as a term of enlargement or limitation, I would note that foreign authority has construed similar language as a limiting term, contrary to the majority's conclusion in this case. See People v. Fisher, 145 Misc. 406, 261 N.Y.S. 390 (1932).
I would reverse and remand this cause to the Department.

ON PETITION FOR REHEARING
ROBERT P. SMITH, Jr., Judge.
Our principal opinion held that Dr. Rotstein's conviction of a federal felony in the United States District Court for the Southern District of New York subjected him to medical license discipline as one "convicted of a felony in the courts of this state or any other state, territory, or country," Section 458.1201(1)(c), Florida Statutes (1977), regardless of the fact that the closest Florida counterpart to Rotstein's federal crime is a misdemeanor. Section 837.06, Florida Statutes (1979).[1]
Rotstein's petition for rehearing newly advances Article X, Section 10, Florida Constitution, as requiring the restrictive statutory interpretation for which he contended, and which we rejected, when the case was initially submitted. That section of the 1968 Constitution provides:
The term "felony" as used herein and in the laws of this state shall mean any criminal offense that is punishable under the laws of this state, or that would be punishable if committed in this state, by death or by imprisonment in the state penitentiary.
Rotstein urges that constitutionally defining "the term felony" as meaning only Florida felonies and those nonFlorida offenses which "if committed in this state" would be Florida felonies may well forbid the legislature to use the term felony in any other sense, but that, in any event, the restricted constitutional definition is highly persuasive evidence of the sense in which the legislature did use the term in Section 458.1201(1)(c). We agree with Rotstein *309 and, because he was not convicted of a felony in that restricted sense, we now vacate the order revoking his license to practice medicine.
Because Article X, Section 10 serves in this case as a compelling instrument of statutory construction, requiring that we give to the statute an interpretation it can fairly bear but which until now we thought was not its intent, we need not decide whether through accident or design Article X, Section 10 gives "the term felony" an authoritarian definition from which the legislature cannot constitutionally depart. But because there is, indeed, some evidence that Article X, Section 10 outlaws legislation employing "the term felony" to describe a crime classed as a felony by the federal or other state government which forbade the crime and convicted its perpetrator, we will set out here what we have learned of this apparent constitutional incursion upon the language, and upon our liberty to use it freely in saying what we mean, so that, forewarned, the draftsmen of "the laws of this state" may use other words, if they choose, to express the same meaning.
Florida's 1885 Constitution also defined "the term felony," and in doing so appeared to forbid its use "in the laws of the State" in any manner except as prescribed by Article XVI, Section 25:
The term felony, whenever it may occur in this Constitution or in the laws of the State, shall be construed to mean any criminal offense punishable with death or imprisonment in the State Penitentiary.
In Duggar v. State, 43 So.2d 860 (Fla. 1949), the Supreme Court considered the effect of former Article XVI, Section 25 upon a statute which disqualified for jury service any person convicted of "any felony." Section 40.01, Florida Statutes (1941).[2] In holding that Duggar's conviction was not vitiated by the service on his jury of two persons who had been convicted of federal liquor law felonies, the Court held that the two jurors had not been convicted of "any felony" because the Constitution and statutes used the term in the exclusive sense of an offense "punishable with imprisonment in the State Penitentiary of Florida." Duggar, 43 So.2d at 861-62 (emphasis by the Court). The Court acknowledged a duty to construe the governing statutes "in the light of the mandatory provisions of section 25, Article XVI of the Constitution ... as undoubtedly they must be construed in the absence of legislative language in the statutes involved indicating an intention to give the term felony a broader or different meaning... ." Id. at 861.
Three dissenting justices in Duggar found the majority's construction of the Constitution and statutes unacceptable, and they offered alternative interpretations: first, that the constitutional definition of "the term felony" was not intended to restrict its use in any statute except "those which prescribe punishment for an offense or crime," i.e., that the legislature could use the term in any other acceptable sense to describe a juror disqualification; second, that the federal felonies committed by those jurors were, after all, "committed in Florida" and could have been prosecuted in Florida courts as Florida felonies; and third, that because the constitutional definition was "a yardstick" or "guide," not a limitation on or prohibition of legislation, the term felony conviction as used in the juror disqualification statute should be construed to include any conviction, wherever obtained, of any crime, wherever committed, which if committed in Florida would constitute a Florida felony.
Neither Duggar opinion took note of the Court's decision two years earlier in In re Weathers, 159 Fla. 390, 31 So.2d 543 (Fla. 1947), discussed in our principal opinion ante p. 306, in which, despite the restrictive definition in Article XVI, Section 25, the Court assumed the validity of a statute which grounded medical licensee discipline on "conviction of any offense which if committed *310 within the state of Florida would constitute a felony under the laws thereof." Section 458.12, Florida Statutes (1941). No constitutional objection was raised in Weathers.
Thus, while dicta of the Duggar majority appeared not to foreclose the possibility of giving the full intended effect to a statute using "legislative language ... indicating an intention to give the term a broader or different meaning" than "the mandatory provisions" of the Constitution, the majority apparently rejected the minority's view that the constitutional definition was applicable only to statutes "which prescribe punishment for an offense or crime" and was wholly inapplicable to other statutes, such as those prescribing the qualifications of jurors or physicians, which the Duggar minority thought might properly employ "the term felony" in usages other than that prescribed by Article XVI, Section 25.
Duggar therefore did not entirely resolve whether (and, indeed, how) a statute could employ "the term felony" in a sense broader than described in "the mandatory language" of Article XVI, Section 25, Florida Constitution (1885). Unfortunately for purposes of this case, neither did the 1968 Constitution, which in above-quoted Article X, Section 10, broadened "the term felony" to include offenses like those of which the Duggar jurors had been convicted (offenses which if committed and prosecuted in Florida would be Florida felonies), but used the same "mandatory language" saying what "the term felony" shall mean "in the laws of this state." Thus new Article X, Section 10 prescribes a wider meaning for the term felony but still appears to foreclose legislation giving the term a broader meaning still, for example, by treating as a "felony," for purposes of disciplinary proceedings against a physician, a conviction so classed by the federal government which convicted him.
The mind struggles to be free of the thought that the 1968 Constitution declares, as did Lewis Carroll's Humpty-Dumpty, that "When I use a word, it means just what I choose it to mean  neither more nor less," and perversely denies the legislature permission to use "the term felony" in ways the language otherwise permits. Certainly this constitutional restriction has no more substantial effect. It may be supposed the Constitution thus aims to prevent the legislature from subjecting citizens to loss of privileges on account of their conviction of a "felony" in some arcane and distant culture. If the legislature needs such a restraint, this one is an illusion. For the legislature still is at liberty to disqualify jurors and physicians who were convicted anywhere of any particular crime the legislature names, see Duggar, supra, or of any foreign crime described by the legislature as punishable in the equivalent of "the state penitentiary," or by imprisonment for more than a year, or described in any other way characteristic of  dare we say?  a felony. Thus the legislature is not prohibited, merely inconvenienced.
The available legislative history concerning Article X, Section 10 of the 1968 Constitution appears to entrench and not to relieve the problem. For the Constitution Revision Commission took up a proposal which would have made the definition more obviously "not a limitation on legislative power, nor ... a prohibition" (the dissenting position in Duggar, 43 So.2d at 862), and rejected it. Thus addressing a draft which said what offenses which shall be felonies "unless otherwise provided by law," the Committee on Drafting and Style recommended striking the quoted words, else there be "no need to define felony in the Constitution as the legislature can change that designation."[3]
*311 In view of all this, in order to enforce a statute authorizing licensee discipline on the explicit ground that he was convicted in another jurisdiction of a crime which was a felony under the laws of that jurisdiction, it may be necessary for a court to return as much violence to the terms of Article X, Section 10, as that section seems to inflict on "the term felony" for no apparent purpose and with no real effect. But that decision can await another day. Today, given the added interpretive weight of Article X, Section 10, we are able without embarrassment to construe former Section 458.1201(1)(c) as meaning by the term "felony" only what the statute says the term "shall include," that being a Florida felony or a crime committed elsewhere which would be a felony if committed in Florida. The added effect of the Constitution makes this construction equally acceptable with that endorsed by our principal opinion. That being so, we are obliged to adopt the construction of this penal statute which favors the accused. Bach v. Board of Dentistry, 378 So.2d 34 (Fla. 1st DCA 1979). It follows that Dr. Rotstein was not convicted of a felony as that term is employed in the statute.
The petition for rehearing is therefore GRANTED, the order appealed is VACATED, and the charges are DISMISSED.
WENTWORTH, J., concurs.
ERVIN, J., dissents with opinion.
ERVIN, Judge, dissenting.
I do not believe Article X, Section 10 of the 1968 Florida Constitution interdicts the responsible regulatory agency from disciplining a licensee who has been convicted of a felony if the licensing statute clearly provides that the conviction is a ground for discipline even though the offense would not, under the laws of Florida, be designated a felony. Duggar v. State, 43 So.2d 860, 861 (Fla. 1949), relied upon by the majority, perceived it necessary to resort to the definition of felony, provided in Article XVI, Section 25 of the 1885 Constitution (superseded by Article X, Section 10), "in the absence of legislative language in the statutes ... indicating an indication to give the term felony a broader or different meaning... ." While courts in other jurisdictions may have reached a different conclusion,[1] the Duggar holding is logically defensible since Section 40.01, Florida Statutes (1941)  relating to the disqualification of an individual to serve as a juror if he had been convicted of a felony  failed to state unambiguously that the conviction in another state or country would be a ground for disqualification even though the offense under the laws of Florida would not have been labeled a felony. The court's reference to the constitutional definition of felony was therefore imperative due to the lack of any legislative guidance as to what was meant by "felony." Its holding was simply one not of constitutional dimension, but of statutory construction which placed a strict interpretation upon an ambiguous penal statute.
Section 458.1201(1)(c), Florida Statutes (1977), does not, however, contain the same fatal ambiguity which afflicted Section 40.01(1). As first enacted by Chapter 12285, Acts of 1927, the statute provided for discipline if "the physician has been convicted in a court of competent jurisdiction of a felony." Moreover, the statute stated that *312 "[t]he conviction of a felony shall be the conviction of any offense which if committed in the State of Florida would constitute a felony under the laws thereof."
In applying the statute's provisions to a situation in which the licensing board sought to revoke the license of a physician who had been convicted of a federal felony which was not an offense under the laws of Florida, the Florida Supreme Court stated that the statute "required [in order for] a conviction to be a cause for revocation of license [it] had to be not only a felony but of an act which is a felony under the laws of the State of Florida." In re: Weathers, 159 Fla. 390, 31 So.2d 543, 544 (Fla. 1947). The 1951 session of the legislature amended Section 458.12(2) by Chapter 26552, Section 1, Laws of Florida (1951), to provide the agency "authority to discipline the holder of a license" who has been
guilty of any of the following:
* * * * * *
(b) Conviction of a felony in the courts of this state or any other state, or territory, or country. The conviction of any offense in another state, territory or country, which if committed in this state would be deemed a felony shall be held a felony under this section without regard to its designation in such other state, territory or country; ...
The statute was again amended by Section 2, Chapter 69-205, Laws of Florida (1969), to authorize, as it did at the time of the revocation proceedings against Dr. Rotstein, the agency to discipline a physician who
[was convicted] of a felony in the courts of this state or any other state, territory, or country. Conviction as used in this subsection shall include a conviction of an offense which if committed in this state would be deemed a felony without regard to its designation elsewhere, ...
It has been a long-standing rule of statutory construction that once a statute is amended, there is a presumption that the legislature intended the statute to have a meaning different than that given it before the amendment. See Carlile v. Game & Fresh Water Fish Com., 354 So.2d 362 (Fla. 1977). The amendments to Section 458.1201(1)(c) following the Weathers decision must have meant something, and I can only conclude that they were intended to subject a physician to discipline even though the offense for which the licensee was convicted was not one which would have been labeled a felony in Florida.
Considering the legislative history of Section 458.1201(1)(c), the amended statute, in my judgment, authorized the Department to revoke the license of a physician who had been previously convicted of an offense under any of the following circumstances: (1) If he was convicted in Florida of a felony; (2) if he was convicted in a foreign jurisdiction of a felony, regardless of the offense's designation in Florida, and (3) if he was convicted in another jurisdiction of an offense, which although not classified in that jurisdiction as a felony, would nevertheless be labeled a felony under the laws of Florida.
A recent decision of the Illinois Supreme Court offers guidance as to how a statute, formerly ambiguous as to its effect, should be interpreted once the legislature clarifies its purpose. In Bruni v. Dept. of Registration and Education, 59 Ill.2d 6, 319 N.E.2d 37 (1974), a doctor's license was revoked by the Department pursuant to a statute which authorized the revocation of a physician's license for "conviction of a felony." (Ill. Rev. Stat. 1965, Ch. 91, par. 16A(2)) Dr. Bruni had previously been convicted of passing counterfeit federal reserve notes in violation of 18 U.S.C. § 472 (1964), a federal felony. Under the unique provisions of Illinois law, however, such an offense was classified only as a misdemeanor. While revocation proceedings were pending against him, the Department requested an opinion from the Illinois attorney general as to whether the term "conviction of a felony" included convictions in a federal court if the offense was one which under Illinois law is classified as a misdemeanor. The attorney general's opinion  similar to that of the Florida Supreme Court's in Duggar  was that "the words `conviction of a felony' standing by themselves and `with no *313 reference to the laws of any other state or the federal government would seem to require an application for situations wherein an offense was committed under the laws of the State of Illinois.'" 319 N.E.2d at 39. The attorney general concluded, under such facts, that the application for revocation should be denied as to such convictions "in sister states or under Federal Laws." Id. The Department, nevertheless, revoked Dr. Bruni's license. Later, however, during the appeal from the order, the General Assembly of Illinois amended the licensing statute to provide that a physician's license might be revoked if the physician had suffered a "conviction in this or another state of any crime which is a felony under the laws of this state or conviction of a felony in a federal court." (Ill. Rev. Stat. 1967, Ch. 91, par. 16A(2)) In affirming the revocation order, the Illinois Supreme Court determined that recourse could appropriately be made to the language of subsequent acts of the lawmaking body when no specific provision aided in the construction of the unamended statute. In so doing, the court decided that the 1967 amendment was a clarification of the meaning of the term "conviction of a felony" as contained in the prior act and that such term necessarily included a physician's conviction of a felony in a federal court. 319 N.E.2d at 40.
To conclude, Duggar, in my judgment, requires resort to the definition of felony, expressed in Article X, Section 10 of the Florida Constitution, only when the licensing statute's purpose is not clearly explicated as permitting revocation of a license upon the licensee's conviction of a felony in another jurisdiction, regardless of its designation as such under the laws of Florida. Such reference is not required in the instant case because Section 458.1201(1)(c) unambiguously provides that a physician may be disciplined when it is shown that he was convicted of a felony in the courts of "this state or any other state, territory or country."
NOTES
[1] Count one of the information charged:

From on or about March 30, 1973 to on or about October 30, 1973, in the Southern District of New York, JEROME ROTSTEIN, the defendant, unlawfully, knowingly and wilfully falsified and concealed material facts, made and caused to be made false, fictitious and fraudulent statements and representations and made and used false writings and documents, knowing the same to contain false, fictitious and fraudulent entries within the jurisdiction of the United States Food and Drug Administration, a department and agency of the United States, in that JEROME ROTSTEIN, the defendant, while conducting clinical research on the investigational drugs Sudoxicam, Flazalone and SaH 43-715 made and submitted to Pfizer, Inc., Riker Laboratories, Inc., and Sandonz Pharmaceuticals, Inc., false and fictitious clinical reports and laboratory data reflecting medical examinations which had not been performed as represented and laboratory data which was false; all in the course of experimental drug studies conducted within the jurisdiction of the said United States Food and Drug Administration, Department of Health, Education and Welfare. (Emphasis added.)
[2] Webb squarely rejects the argument that Section 120.57(1)(b)9 requires a license-revoking agency "to explain its rationale for increasing the penalty recommended by the hearing officer." 367 So.2d at 204. Rotstein's appeal makes no point of any deficiencies in the Board's order, so it seems inappropriate to inquire in this case whether any other sections of Chapter 120, where McDonald v. Dept. of Banking and Finance, 346 So.2d 569, 582 (Fla. 1st DCA 1977) found a duty to explicate the exercise of discretion, may impose that duty on license-revoking agencies. It must be said, however, that Judge Wentworth's dissent makes a compelling argument for the desirability of imposing such a duty of exposition, even if a reviewing court is empowered to do no more than disapprove an inadequate statement and remand for reconsideration. Section 120.68(12). Our experience suggests that inconsistent and draconian penalties are more than a possibility when professional regulatory boards, composed of part-time judges largely chosen from the accused's peer group, Section 20.30, Florida Statutes (1979), are at liberty to disregard, without a stated reason, a reasoned penalty recommendation.
[1] Rotstein was convicted of willfully making a false statement to an agency of the United States, in violation of Title 18, U.S.C., Section 1001. Section 837.06, Florida Statutes (1979), provides:

Whoever knowingly makes a false statement in writing with the intent to mislead a public servant in the performance of his official duty shall be guilty of a misdemeanor of the second degree... .
[2] Section 40.01, Florida Statutes (1941):

No person, who shall have been convicted of bribery, forgery, perjury or larceny, or any felony, unless restored to civil rights, shall be qualified to serve as a juror.
[3] See tentative draft by Committee on Drafting and Style, dated 10/10/66, found in series 720, Box 08, folder 71, Constitution Revision Commission Records 1965-1967, Florida Archives, stating:

1. The form of this section is recommended by the [Committee on] Human Rights as follows:
Felony defined.  Those offenses punishable by death and those punishable by imprisonment in the state penitentiary shall be felonies, unless otherwise provided by law.
2. This modifies the form of the 6-30-66 draft by the addition of the words "unless otherwise provided by law" and there is no need to define felony in the Constitution as the legislature can change that designation. The Committee on Drafting and Style recommends deletion of the phrase "unless otherwise provided by law."
[1] An annotation pertaining to certain grounds for revocation of a physician's license states:

The question of what is meant by the term "felony" as used in the statutes within the scope of this annotation has been litigated in several cases ... and in only one jurisdiction has it been held, in strict conformity with the plain text of the statute, that the word applied only to an offense which would be a felony if committed in that state; generally, the term is held to mean any offense which is a felony under the law of the jurisdiction in which the conviction was obtained.
Annot., 93 A.L.R.2d 1398 at 1414 (1964).