404 So.2d 1106 (1981)
Harmon W. SHIELDS, Appellant,
v.
Nevin G. SMITH, As Secretary of Administration, and A.J. McMullian, III, As State Retirement Director, Appellees.
No. ZZ-413.
District Court of Appeal of Florida, First District.
October 8, 1981.
*1108 Thomas M. Ervin, Jr., and E.C. Deeno Kitchen of Ervin, Varn, Jacobs, Odom & Kitchen, Tallahassee, for appellant.
Augustus D. Aikens, Div. Atty., Div. of Retirement, Dept. of Administration, Tallahassee, for appellees.
ROBERT P. SMITH, Jr., Chief Judge.
Shields, the former executive director of the Department of Natural Resources, appeals a circuit court judgment that his conviction of federal crimes committed while he held State office requires forfeiture of his State retirement benefits. Section 121.091(5)(f), Florida Statutes (1979).[1] We affirm.
In August 1980 the United States District Court for the Northern District of Florida convicted Shields on three counts of violating the Hobbs Act, 18 U.S.C. § 1951 (1976), which provides in pertinent part:
(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, ... shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.
(b) As used in this section 
.....
(2) The term "extortion" means the obtaining of property of another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right. (Emphasis supplied)
*1109 The jury returned general verdicts of guilt to all three counts of an indictment charging Shields and real estate broker Jack Quick with one count of conspiring and two counts of attempting to obtain money to which they were not entitled from another broker, H. Bruce McIver, whose clients wanted to sell certain properties to the State under DNR's program for the acquisition of environmentally endangered lands. Chapter 259, Fla. Stat. (1979). Key sections of the indictment alleged that Shields conspired and attempted to obtain money by extortion "under color of official right,"
in consideration for the defendant's official acts as Executive Director, State of Florida Department of Natural Resources, so that the defendant SHIELDS would suspend his independent and unbiased judgment on the merits when considering the recommendation of the purchase of certain lands ... pursuant to the State's Environmentally Endangered Lands program.
Section 121.091(5)(f), Florida Statutes, forfeits the benefits otherwise payable to a member of the State retirement system who is "found guilty by verdict of a jury, or by the court trying the case without a jury," of specified crimes committed before retirement, including "bribery in connection with the employment, or other felony specified in chapter 838." The trial court rightly held that the "acts charged and for which the defendant was found guilty" constituted requesting or soliciting unlawful compensation for official behavior, a third degree felony proscribed by Section 838.016(1), Fla. Stat. (1979). That statute provides:
It is unlawful for any person corruptly to give, offer, or promise to any public servant, or, if a public servant, corruptly to request, solicit, accept, or agree to accept, any pecuniary or other benefit not authorized by law, for the past, present, or future performance, nonperformance, or violation of any act or omission which the person believes to have been, or the public servant represents as having been, either within the official discretion of the public servant, in violation of a public duty, or in performance of a public duty... .

Forfeiture Based on Federal Conviction
The recital of disqualifying crimes in Section 121.091(5)(f) contains no express reference to federal court convictions or to convictions in the courts of other states. On that account, arguing a strict interpretation of this forfeiture statute, Shields argues that the only disqualifying crimes are Florida crimes adjudicated by the State courts of Florida. We do not agree. A federally adjudicated crime is cause for forfeiture if it otherwise satisfies the specifications of the statute.
The disqualifying crimes pertinent to this case are, in the terms of Section 121.091(5)(f), "bribery in connection with the employment, or other felony specified in chapter 838." Shields was not convicted of any crime entitled "bribery," so we must decide whether he was convicted of a felony specified in chapter 838. Encountering the word "felony" when it appears in Florida statutes, we are bound to give it the meaning assigned by Florida's Constitution. See Rotstein v. Dept. of Professional and Occupational Regulation, 397 So.2d 305, 308 (Fla. 1st DCA 1981) (On petition for rehearing). Article X, Section 10 of the 1968 Constitution provides:
The term "felony" as used herein and in the laws of this state shall mean any criminal offense that is punishable under the laws of this state, or that would be punishable if committed in this state, by death or by imprisonment in the state penitentiary.
Rotstein characterized this constitutional definition as a "compelling instrument of statutory construction." 397 So.2d at 309. That definition, which is incorporated also in the general statutory definition of the term felony,[2] unmistakably encompasses crimes committed against other sovereigns, *1110 which if committed in Florida would be punishable by a Florida court as a felony.
The fact that Shields' federal offenses were indeed committed in Florida, in a geographic sense, does not exempt them from the disqualifying list on grounds that they were directly prosecutable in Florida State courts, but were not so prosecuted, and therefore do not qualify as crimes "that would be punishable [as a felony] if committed in this state." Such a construction would give disqualifying effect to judgments of conviction entered by a court of any other State or of any United States court save only the courts of the Northern, Middle, and Southern Districts of Florida. There is no reason to attribute such a meaning to the statute, and the Supreme Court has not on that ground disregarded the convictions of federal courts, sitting in Florida, for crimes committed in Florida against the United States. See In re Weathers, 159 Fla. 390, 31 So.2d 543 (Fla. 1947), where the Court concluded that a Jacksonville physician's mailing of nonmailable matter, resulting in conviction by a Florida federal court, was not a felony supporting license revocation, but only because the federal crime was not an act constituting a felony under Florida laws.

Acts for which Shields was Convicted
Focusing now on the acts for which Shields was convicted, as described in the charging instrument, we find that those acts constitute and would support a Florida conviction of a Chapter 838 felony, namely, requesting or soliciting unlawful compensation for official behavior. Section 838.016(1). We disregard Shields' conspiracy conviction because the crime of conspiracy as interpreted by the federal courts under the Hobbs Act[3] lacks essential elements of Chapter 838 felonies. Turning to the attempt convictions, we note that the Hobbs Act requires proof of two basic elements: interference with commerce and extortion. Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). Since nothing in the Florida statute requires interference with interstate commerce, that element of the federal crime is superfluous here. Ignoring that element has no effect on our further analysis, for in federal law the proscribed attempt is directed at the extortion of property rather than at the interference with commerce. See United States v. Rosa, 560 F.2d 149, 152-53 (3d Cir.1977), cert. den., 434 U.S. 862, 98 S.Ct. 191, 54 L.Ed.2d 135 (1977); United States v. Frazier, 560 F.2d 884 (8th Cir.1977), cert. den., 435 U.S. 968, 98 S.Ct. 1605, 56 L.Ed.2d 58 (1978).
The acts of Shields that are pertinent here are those constituting extortion. The clearly predominant view of the federal courts of appeals is that Hobbs Act extortion may be attempted in either of two ways under 18 U.S.C. § 1951(b)(2): extortion by threat, force of duress, which is plainly foreign to our analysis; or extortion "under color of official right," which like the Florida unlawful compensation crime contains no element of threat or duress. See United States v. Williams, 621 F.2d 123, 124 (5th Cir.1980), cert. den., 450 U.S. 919, 101 S.Ct. 1366, 67 L.Ed.2d 346 (1981), and cases cited. The indictments on which Shields was convicted charge that he attempted to obtain money from another under color of official right. That, consequently, is the crime for which Shields was convicted, and which must now be examined for elements constituting a Chapter 838 felony.

Elements of Florida Crime and Extortion under Official Right
Acts constituting essential elements of the federal extortion indictment *1111 also constitute the offense proscribed by Florida's unlawful compensation statute. First, Shields' "color of official right," required by the federal statute, was his office as executive director of DNR, which assuredly is a public office addressed by Florida Statute 838.016(1). See generally Annot., 70 A.L.R.3d 1153 (1976) (extortion under color of office).
Secondly, Shields was convicted of threatening to prevent the State's purchase of McIver's clients' land if certain payments to him were not forthcoming. We consider that by "attempting to obtain" this money, in the manner charged and proved for the federal conviction, Shields "requested" or "solicited" payments in the sense those terms are employed by the Florida statute. Doubtless, every request or solicitation of money (the Florida elements) is an attempt to obtain money (the federal elements); more to the point, the converse is also true: it having been federally adjudged that Shields attempted to obtain illegal payments in connection with the performance of his duties, we are satisfied that Shields, by words or equivalent conduct, requested or solicited those payments. There is no general federal statute proscribing attempts to commit crimes punishable under other statutes; under federal law, attempts to commit a crime are punishable, if at all, as the generic crime itself, and by the same statute. We therefore need not cope with abstract definitions of criminal attempts considered as detached from the object crime. Shields was forbidden by federal law to attempt to get illegal payments, and his unlawful attempt to get them was the substantial equivalent of requesting or soliciting those payments. We therefore need not inquire whether it was theoretically possible, using abstract common law rationalizations of criminal attempts,[4] for Shields to have been federally convicted for attempting, by means short of a request or solicitation by word or deed, to extract illegal compensation.
Thirdly, we find that the federal and Florida statutes similarly describe the benefit which the public servant must have sought to obtain, in order to constitute the specified offense. Appellant argues that the Florida statute requires the benefit to flow directly to the public servant, while there is no such requirement under the federal statute. While appellant's reading of the federal statute is correct in this respect, e.g., United States v. Cerilli, 603 F.2d 415, 420 (3d Cir.1979), cert. den., 444 U.S. 1043, 100 S.Ct. 728, 62 L.Ed.2d 728 (1980), it is not necessary under the Florida statute, either, that the benefit flow into the public servant's hands. The definition of "benefit" in Section 838.014(1), Fla. Stat., includes "the doing of an act beneficial to any person in whose welfare he [the public servant] is interested."
Fourthly, the Florida statute's requirement for a "corrupt" request or solicitation was satisfied by Shields' federal conviction. "Corruptly" is defined by Section 838.014(6) to mean in part "with a wrongful intent." The "wrongfulness" element of the federal crime is implicitly included in the concept of "under color of official right" when accompanied by charges of knowing and willing conduct. United States v. Trotta, 525 F.2d 1096, 1099 n. 5 (2d Cir.1975), cert. den., 425 U.S. 971, 96 S.Ct. 2167, 48 L.Ed.2d 794 (1976). Shields was charged with having acted knowingly and willingly, therefore corruptly.
The final element of the Florida statute, also a part of the "corruptly" definition, is that the public servant requested the forbidden benefit "for the past, present, or future performance, nonperformance, or violation of any act" either believed or represented as being "within the official discretion of the public servant, in violation of *1112 a public duty, or in performance of a public duty." In other words, the public servant must be shown to have granted some consideration, touching on his duties, in exchange for the solicited benefit. We recognize that the "under color of official right" language of the federal statute has been read more broadly than this by federal courts, seeking to accommodate Hobbs Act prosecutions of local corruption when, for one reason or another, there was no state prosecution. See Ruff, Federal Prosecution of Local Corruption: A Case Study in the Making of Law Enforcement Policy, 65 Geo. L.J. 1171, 1174-96 (1977); Comment, 1977 Wash.U.L.Q. 326 (1977). The federal courts do not require proof that the public servant actually performed or did not perform his duties, so long as "the motivation for the payment focuses on the recipient's office." United States v. Braasch, 505 F.2d 139, 151 (7th Cir.1974), cert. den., 421 U.S. 910, 95 S.Ct. 1561, 43 L.Ed.2d 775 (1975); Trotta, supra. Nevertheless, the federal cases do require some relationship between the benefit received and the public servant's office. In this case, Shields was charged with making a rather straightforward arrangement to obtain money "in consideration for" his "official acts" as DNR executive director, so that Shields "would suspend his independent and unbiased judgment on the merits when considering the recommendation of the purchase of certain lands" under the endangered lands program.
In sum, we find that the federal convictions included all the elements necessary to prove the Florida felony of soliciting or requesting unlawful compensation for official behavior. While this laborious process of matching up elements of a foreign crime with those of a Florida felony is more difficult than simply determining that under foreign law the offense was a felony, this process is more likely to ensure that disabilities are imposed only for conduct the forum considers reprehensible. This is the approach of the Uniform Act on the Status of Convicted Persons (ULA) § 2, which requires the forum state to use its own laws to characterize crimes. Under this analysis, civil disability statutes of the forum state, such as the benefit forfeiture statute here, should apply to convictions outside the forum only if the offense in question is a disabling crime under the forum's own laws. See generally The Collateral Consequences of a Criminal Conviction, 23 Vand. L.Rev. 929 (1970). Justification aside, this analysis is plainly required by our Constitution's Article X, Section 10, definition of "the term felony."

Other Issues
Turning to other issues, we decline to accept appellant's ingenious argument that when Shields completed 10 years of State service in 1974, entitling him to termination benefits, his rights vested in the sense of freezing the list of forfeiture crimes then existing, not including "other felonies specified in Chapter 838," which was added in 1975. Whatever vested rights Shields may have had protecting him from alteration of benefits, Grady v. Division of Retirement, 387 So.2d 419 (Fla. 1st DCA 1980), we cannot conceive that his vested rights included the right to commit, with impunity, any but a particular list of felonies.
Finally, we do not find the unlawful compensation statute unconstitutionally vague. Cf. State v. DeLeo, 356 So.2d 306 (Fla. 1978) as interpreted in Sandstrom v. Leader, 370 So.2d 3 (Fla. 1979).
Because the trial court correctly concluded that appellant had committed a felony violating Chapter 838 of the Florida statutes, the judgment declaring that Shields had forfeited his termination benefits is AFFIRMED.
JOANOS and THOMPSON, JJ., concur.
NOTES
[1] Section 121.091(5)(f) provides:

Any member who has been found guilty by a verdict of a jury, or by the court trying the case without a jury, of committing, aiding, or abetting any embezzlement or theft from his employer, bribery in connection with the employment, or other felony specified in chapter 838, committed prior to retirement, or who has entered a plea of guilty or of nolo contendere to such crime, or any member whose employment is terminated by reason of his admitted commitment, aiding, or abetting of an embezzlement or theft from his employer, bribery, or other felony specified in chapter 838, shall forfeit all rights and benefits under this chapter, except the return of his accumulated contributions as of his date of termination.
[2] Section 775.08(1), Fla. Stat. (1979).
[3] E.g., United States v. Shelton, 573 F.2d 917, 919 (6th Cir.1978), cert. den., 439 U.S. 827, 99 S.Ct. 99, 58 L.Ed.2d 120 (1978). The general federal statute proscribing conspiracy to commit an offense against the United States, 18 U.S.C. § 371 (1976), and accompanying case law require only proof of an agreement between two or more persons to commit the specific offense and an overt act in furtherance of the conspiracy. United States v. Butler, 618 F.2d 411, 414 (6th Cir.1980), cert. den., 447 U.S. 927, 100 S.Ct. 3024, 65 L.Ed.2d 1121 (1980).
[4] At common law, the elements of attempt were an intent to commit a target crime, some act beyond mere preparation toward its commission, and a failure to complete the crime. 22 C.J.S. Criminal Law § 75 (1961). In determining what constitutes an attempt under specific federal statutes, the federal courts do sometimes consider these elements. E.g., United States v. Mandujano, 499 F.2d 370, 376-77 (5th Cir.1974), cert. den., 419 U.S. 1114, 95 S.Ct. 792, 42 L.Ed.2d 812 (1975).