PADOVANO, J.
 

 Ken Jenne, the former Sheriff of Bro-ward County, appeals a final order by the Department of Management Services adjudicating a forfeiture of his rights and benefits under the state retirement law. We hold that Jenne’s federal conviction for conspiracy to commit mail fraud qualifies as a “specified offense” under section 112.3173(2)(e)6., Florida Statutes (2001), and that the commission of the offense justifies the forfeiture of his retirement benefits. We therefore affirm.
 

 Jenne was charged by information on September 4, 2007, in the United States District Court for the Southern District of Florida, with one count of conspiracy to commit mail fraud and three counts of filing a false tax return. The facts alleged by the government in support of these charges are not in dispute. Jenne admitted the allegations in a written plea agreement, and the federal judge accepted his admission as the factual basis for his guilty plea. The crimes referred to in the information were committed over the course of several years in a series of unlawful transactions. These transactions are summarized as follows.
 

 A real estate developer arranged for the demolition of Jenne’s private residence in 2001 by soliciting bids, contracting with a bidder, and paying the contractor $8,130. One of Jenne’s secretaries and the attorney for the Broward County Sheriffs Office exchanged communications with the developer’s secretary during the course of the work. The developer and the attorney also appeared before the Lake Worth Code Enforcement Board on Jenne’s behalf. At the same time, the developer was negotiating with Jenne in his public capacity to lease additional office space to the Sheriffs Office. Jenne signed an amendment to the existing lease with the developer, committing the Sheriffs Office to additional square footage for five years at a cost of $348,000. In addition, he agreed to lease another office from the developer on behalf of the Sheriffs Office for ten years at $416,000 per year. The developer never sought reimbursement for the $8,130 he had paid to the contractor who did the work on Jenne’s private residence, nor did he seek to be compensated for any of the time he spent on that project.
 

 Jenne was involved in 2002 with the same real estate developer in a plan to invest money in a company that made an oil well cleaner. In the course of the discussions about this plan, Jenne flew to Louisiana at the developer’s expense. Jenne was to receive a 25 percent stake in the well cleaner company, but he ultimately backed out of the deal. The developer then paid Jenne $10,000 for his work on the uncompleted transaction. The payment was made by a check that was passed through the bank account of one of the developer’s companies, and then through another account, before it was tendered to Jenne.
 

 Jenne owed the Internal Revenue Service $18,000 for tax due on his 2003 federal income tax return. His secretary knew that he did not have the money, so she suggested that he get it from the real
 
 *740
 
 estate developer. Jenne said he could not do that, because the developer did business with the Broward County Sheriff’s Office. The secretary then suggested that the developer could lend the money to her, and she would then lend it to Jenne. Jen-ne agreed. He asked the developer to lend $20,000 to his secretary but did not tell him what the loan was for. The developer never sought repayment of the loan.
 

 In 2004, the president of an electronic surveillance company that was providing services to the Sheriffs Office asked Jenne to recommend someone to lead a training session the company was conducting in Barbados. It was within Jenne’s discretion to allow off-duty employment, and he recommended an officer on his staff for the training position. The president asked Jenne whether he owed anyone for finding the instructor, and Jenne suggested that he compensate a secretary in his office for the work that she had done on the project. Meanwhile, Jenne told the secretary that she would be receiving a check from the surveillance company and he instructed her to give the check to his personal secretary. The president sent the first secretary a check for $3,000. She passed the check along to Jenne’s personal secretary, as instructed, and the funds from the check were ultimately deposited into Jen-ne’s personal bank account.
 

 A similar transaction took place in 2004, when the president of the same surveillance company asked Jenne to recommend an officer to conduct a security survey for a client. Jenne made the recommendation, and the president of the surveillance company paid him $2,500. Again the check was sent to one secretary in the Sheriffs Office and passed along to another, and the funds were then deposited into Jenne’s account.
 

 Jenne was a partner in a law firm from 1992 to 1998. In late 1997, the firm bought Jenne a Mercedes convertible for $61,297, financing it with a five-year loan. Jenne left the firm in early 1998 when he was appointed Sheriff and he took the Mercedes with him. The firm continued to pay on the loan until it was paid off in 2003 and it paid for the auto insurance until Jenne’s conviction. When the firm offered to transfer title to Jenne in 2005, he declined, saying that it would look bad in the press. The firm paid about $78,000 on the loan and $30,000 for insurance after Jenne left the firm. After Jenne became Sheriff, the firm worked on nineteen cases for the Sheriffs Office.
 

 Jenne was required to disclose his net worth, assets, and liabilities to the Florida Commission on Ethics and his income to the Internal Revenue Service annually. He did not disclose the assets he had acquired from any of these transactions to the Ethics Commission. Nor did he disclose the income he had received from any of these transactions to the Internal Revenue Service.
 

 A hearing was held on Jenne’s guilty plea on September 5, 2007. After reviewing the formal charge and the statement of facts in the plea agreement, the federal judge accepted the plea. The judge then sentenced Jenne to prison for a year and a day, placed him on a term of probation, ordered him to pay a $3,000 fine and directed him to pay the taxes owed.
 

 When the sentence was imposed, Jenne resigned and applied to the Florida Department of Management Services for his pension. The Department responded on January 24, 2008, by sending Jenne notice that he had forfeited his retirement benefits as a result of his federal convictions. In support of this decision, the Department cited article II, section 8(d), of the Florida Constitution and section 112.3173, Florida Statutes.
 

 
 *741
 
 Jenne challenged the forfeiture, and the parties submitted a joint stipulation of facts in lieu of a formal hearing. After reciting the factual basis for the convictions, the administrative law judge concluded that Jenne had “abused his position and violated the public trust,” thus forfeiting his retirement benefits. The Department adopted the administrative law judge’s findings of fact and conclusions of law and entered a final order to the same effect. Jenne filed a timely appeal to this court to seek review of the order.
 

 The primary source of the state’s authority to declare a forfeiture of rights and benefits under the state retirement system is the Florida Constitution. Article II, section 8(d) states in material part:
 

 SECTION 8. Ethics in government. — A public office is a public trust. The people shall have the right to secure and sustain that trust against abuse. To assure this right:
 

 [[Image here]]
 

 (d) Any public officer or employee who is convicted of a felony involving a breach of public trust shall be subject to forfeiture of rights and privileges under a public retirement system or pension plan in such manner as may be provided by law.
 

 This provision is implemented by legislation contained in Chapter 112, Part III, Florida Statutes, entitled “Code of Ethics for Public Officers and Employees.” Section 112.3173(3) states that “[ajny public officer or employee who is convicted of a specified offense committed prior to retirement” shall forfeit all rights and benefits under the retirement system.
 

 The felony conviction that served as a basis for the administrative order declaring a forfeiture of retirement benefits in this ease was Jenne’s conviction for conspiracy to commit mail fraud. This crime is not identified by name in section 112.3173(2)(e), but it could serve as the basis for a forfeiture of retirement benefits if it meets the general definition of a specified offense in subsection 112.3173(2)(e)6. This subsection states:
 

 (e) ‘Specified offense’ means:
 

 [[Image here]]
 

 6. The committing of any felony by a public officer or employee who, willfully and with intent to defraud the public or the public agency for which the public officer or employee acts or in which he or she is employed of the right to receive the faithful performance of his or her duty as a public officer or employee, realizes or obtains, or attempts to realize or obtain, a profit, gain, or advantage for himself or herself or for some other person through the use or attempted use of the power, rights, privileges, duties, or position of his or her public office or employment position.
 

 Jenne contends that his conviction for conspiracy to commit mail fraud does not meet the definition of a specified offense because the elements required to prove the offense do not match the elements of any of the crimes described in the statute. The Department argues that the crime qualifies as a specified offense by the manner in which it was committed. Jenne did not conspire to commit mail fraud in a purely personal venture; he did so from a position of public trust, by using the power of his office to gain a benefit for himself. The question emerging from these competing arguments is whether the term “specified offense” is defined by the conduct of the former public official, or whether it is defined more narrowly by the elements of the crime for which the official was convicted.
 

 We need not look beyond the text of the statute to find the answer to the question.
 
 *742
 
 Section 112.317S(2)(e)6., Florida Statutes defines a specified offense as the commission of
 
 “any felony by a public officer or employee who,
 
 willfully and with intent to defraud the public ... of the right to receive the faithful performance of his or her duty ... realizes or obtains, or attempts to realize or obtain, a profit, gain, or advantage for himself or herself ... through the use or attempted use of the power, rights, privileges, duties, or position of his or her public office.” (Emphasis added.) By this language, any felony could qualify as a specified offense, so long as the remaining conditions in the statute have been met. All of the remaining conditions refer to the conduct of the official, not the definition of the crime.
 

 This conclusion is supported not only by the plain meaning of the words used in the statute, but also by the sentence structure of the statute. The word “who” is a relative pronoun. It could only refer to a
 
 person,
 
 in this case the public official whose retirement benefits are at issue. Hence, the phrase “by a public officer or employee who” intends to defraud the public to obtain a personal gain by the use of his office, refers to the actions taken by the public officer. It does not, and could not by the rules of English grammar, refer to the elements of the crime for which the officer was convicted. Jenne’s argument would be well taken if the statute had been drafted to say that the public official must be convicted of a crime that requires proof of an intent to defraud for the purpose of personal gain. But the statute plainly does not say that.
 

 Whether the crime of conspiracy to commit mail fraud meets the definition of a specified offense in section 112.3173(2)(e)6. depends on the way in which the crime was committed. It might not meet the definition if the public officer were to use the mail unlawfully in a private venture without disclosing the office held and without obtaining a benefit by virtue of the office. But it would be an entirely different matter if, for example, a public officer had used the mail to solicit a bribe in return for a favor performed at the expense of the public.
 

 Our conclusion that section 112.3173(2)(e)6. defines the term “specified offense” by the conduct of the public officer and not by the elements of the crime is supported, at least indirectly, by several other decisions. For example, in
 
 Newmans v. Division of Retirement,
 
 701 So.2d 573 (Fla. 1st DCA 1997), this court held that a sheriff who was convicted of providing inside information to drug traffickers forfeited his retirement benefits. The crimes at issue in that case, conspiracy to manufacture marijuana, manufacturing marijuana, and conspiracy to obstruct justice, were not crimes that would necessarily involve a breach of the public trust. However, the sheriff used the power of his office to assist the traffickers and he thereby obtained a personal benefit in breach of the public trust.
 

 Likewise, in
 
 Simcox v. City of Hollywood Police Officers’ Retirement System,
 
 988 So.2d 731 (Fla. 4th DCA 2008), the court held that a police officer who knowingly operated an escort vehicle to protect a truck that was delivering heroin forfeited his retirement benefits. The crime in question, conspiracy to possess heroin with intent to distribute, would not necessarily qualify as a specified offense. However, as in
 
 Newmans,
 
 the crime was committed not as a private venture, but by the misuse of a public office.
 

 Jenne relies on
 
 Shields v. Smith,
 
 404 So.2d 1106 (Fla. 1st DCA 1981), for the proposition that a federal offense can qualify as a specified offense only if the elements of the federal crime match those of a comparable state crime that would justi
 
 *743
 
 fy a forfeiture of retirement benefits. Although it was not necessary to the holding in that case, the court did observe that the federal crime of conspiracy to interfere with interstate commerce was not a specified offense, because the elements of the crime did not match those of any state crime that could be used to support a forfeiture.
 

 However, the
 
 Shields
 
 decision is not controlling here for two reasons. First, the opinion was published before the enactment of the catch-all provision in section 112.8173(2)(e)6. With the advent of this subdivision, it is now clear that a specified offense can be “any felony,” so long as it is committed in the manner described in the statute. Second, and equally as important, the public officer in
 
 Shields
 
 was convicted by a jury. This necessarily limited the inquiry to the elements of the crime. The court could not know which facts the jury accepted and which it rejected. All the court could know for certain was that the defendant committed a crime that required proof of certain elements. In contrast, Jenne entered a plea of guilty and signed a plea agreement admitting all of the material facts. That the crime of conspiracy to commit mail fraud was committed in a way that makes it a specified offense under the law is a matter of record.
 

 Jenne also argues that this court should interpret section 112.3173(2)(e)6. in light of the Ethics in Government provision in article II, section 8(d) of the Florida Constitution. We agree with the general premise of this argument but find nothing in the constitution that runs contrary to our interpretation of the statute. Article II, section 8(d) provides that “any public officer who is convicted of a felony involving a breach of public trust shall be subject to forfeiture of rights and privileges under a public retirement system ... in such manner as may be provided by law.” This language does not suggest that the felony must be one that involves a breach of the public trust by its very definition. In any event, section 8(d) expressly confers authority on the Florida Legislature to define by general law the precise circumstances in which the commission of a felony can result in the forfeiture of retirement benefits.
 

 For these reasons we find no error in the final administrative order declaring a forfeiture of Jenne’s benefits under the Florida Retirement System. Jenne was convicted of a felony under federal law, and the facts he admitted in his plea agreement establish that his offense falls within the class of offenses that can justify a forfeiture of retirement benefits.
 

 Affirmed.
 

 WEBSTER and ROBERTS, JJ, concur.