# Third District Court of Appeal

## State of Florida

Opinion filed November 14, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D18-780
Lower Tribunal No. 17-1318
_____

**Javier Cuenca,**
Appellant,

vs.

**State Board of Administration,**
Appellee.

An Appeal from the State Board of Administration.

Law Offices of Slesnick and Casey, LLP, and James C. Casey, for appellant.

Ruth Ann Smith (Tallahassee), Assistant General Counsel; Pennington, P.A., and Brian A. Newman (Tallahassee) and Brandice D. Dickson (Tallahassee), for appellee.

Before ROTHENBERG, C.J., and SALTER and LINDSEY, JJ.

ROTHENBERG, C.J.

Javier Cuenca ("Cuenca"), a former employee of the Miami-Dade County

Public Schools ("MDCPS"), seeks judicial review of the final order entered by the State Board of Administration ("State Board"), concluding that pursuant to section 112.3173(3), Florida Statutes (2012), Cuenca has forfeited his rights and benefits under the Florida Retirement System ("FRS") Investment Plan, except for the portion of his accumulated contributions, because he was convicted of a "specified offense" committed prior to his retirement as defined in section 112.3173(2)(e)6., Florida Statutes (2012). For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

On February 7, 2017, the State Board notified Cuenca that pursuant to section 112.3173 he had forfeited his rights and benefits under the FRS Investment Plan as a result of his October 4, 2016 plea of nolo contendere to two counts of felony battery in case number 14-25626 for acts committed while employed by MDCPS and demanded that Cuenca return the distributions he had received, except for his employee contributions. After receiving the State Board's notice, Cuenca requested a formal hearing before the Division of Administrative Hearings ("DOAH").

At the formal hearing before DOAH, the State Board introduced into evidence, among other things, the following: (1) the transcript of the sworn statement of one of the victims, D.F., made prior to Cuenca's arrest in case number 14-25626; (2) the original information filed against Cuenca relating to D.F.; (3) the

2

arrest affidavit relating to D.F.; (4) the transcript of D.F.'s deposition conducted by Cuenca's counsel following Cuenca's arrest; (5) the consolidated information resulting from Cuenca's negotiated plea; and (6) the transcript of Cuenca's plea colloquy. In addition, several witnesses testified at the hearing, including Cuenca and the prosecutor involved in Cuenca's criminal case.

The evidence presented at the hearing reflects that Cuenca was employed by MDCPS in various positions, including as a basketball coach. After four of Cuenca's basketball players alleged that he had sexually harassed and/or assaulted them, Cuenca was charged in four separate cases with lewd and lascivious molestation on a child twelve years of age or older but less than sixteen years of age, attempted lewd and lascivious molestation on a child twelve years of age or older but less than sixteen years of age, or lewd and lascivious conduct on a child over sixteen years of age by a defendant over eighteen years of age.

D.F.'s sworn statement and/or deposition reflect that Cuenca was D.F.'s basketball coach starting when he was in the seventh grade at a Miami-Dade County middle school, and Cuenca also coached D.F. when he was in the ninth grade at a Miami-Dade County high school. While D.F. and Cuenca were alone in a classroom when D.F. was in the ninth grade, Cuenca asked D.F. to see what he referred to as D.F.'s "virgin line." Cuenca explained to D.F. that by looking at D.F.'s penis, he could tell whether or not D.F. was a virgin and this was important

3

because having sex would adversely affect D.F.'s basketball performance. Because Cuenca had repeatedly asked D.F. to let him see his "virgin line" and D.F. was tired of being repeatedly asked, D.F. pulled down his shorts and exposed his penis. However, when Cuenca attempted to touch D.F.'s genitals, D.F. swiped Cuenca's hand away before Cuenca was able to touch him, pulled up his pants, and left the classroom. D.F. did not initially report this incident. The evidence also reflects that Cuenca asked D.F. if he wanted to take an enhancement drug that would make him stronger and bigger. At first, D.F. said that he did, but after Cuenca told D.F. that he would have to constantly check D.F.'s testicles while on the drug, D.F. decided to not take the enhancement drug because he did not want expose his genitals to Cuenca.

In addition to the original information relating to D.F., the police reports, the consolidated information, D.F.'s sworn statement, the prosecutor's testimony, and the judgment showing Cuenca's convictions for two counts of felony battery, the State Board also introduced a transcript of the plea colloquy, which reflects that Cuenca entered into a negotiated plea on October 4, 2016. The transcript reflects that although Cuenca was willing to change his plea from not guilty to one of no contest, Cuenca was unwilling to plea to any charge that would designate him as a sexual offender or to any charge he believed would later prohibit him from sealing his criminal record. Thus, the State agreed to consolidate the four cases involving

4

four separate victims into a single four-count information under case number 14-25626, dismiss two of the four counts, and amend the two remaining counts relating to victims D.F. and O.Q. to charge felony batteries, in exchange for Cuenca's plea of nolo contendere to two counts of felony battery, and Cuenca's agreement to waive any defects in the new charging document or the arrest forms and to stipulate that there was a prima facie factual basis for the negotiated plea. Pursuant to the negotiated plea, Cuenca pled nolo contendere to the two counts of felony battery, stipulated that there was a factual basis to support his plea, waived any and all defects in the amended information, and agreed, among other things, that during the term of his probation, he could not: have any unsupervised contact with any minor; reside in a setting with minors; or teach, volunteer, coach, or engage in any activity that would place him in a position of authority over minors. Based on the negotiated plea, the trial court found Cuenca guilty of the two counts of felony battery and withheld adjudication.

In addition to the plea colloquy and other documentary evidence, Cuenca and the prosecutor who investigated the case and negotiated the plea with Cuenca, testified at the formal hearing. Cuenca admitted that he was D.F.'s basketball coach at a Miami-Dade County public middle school and high school, and that he was aware of the allegations made by D.F.—that he had asked D.F. to pull down his shorts, and thereafter, he had attempted to touch D.F.'s genitals. Cuenca also

5

acknowledged that he was able to be at the high school because he was a basketball coach at the school, and he additionally acknowledged that he entered into the negotiated plea to resolve the pending criminal charges, including those relating to D.F.

Following the hearing, the ALJ entered its recommended order making numerous factual findings, including that Cuenca was an employee of MDCPS and that Cuenca pled nolo contendere to two counts of felony battery, which constitutes a "conviction" pursuant to section 112.3173(2)(a).[1] However, in its conclusions of law, the ALJ determined that despite its determination that Cuenca was an employee of MDCPS at the time of the offenses, the State Board failed to establish the "nexus" requirement for forfeiture under section 112.3173(2)(e)6., and therefore, Cuenca had not forfeited his FRS benefits. Specifically, the ALJ determined that the record lacked competent, substantial evidence of Cuenca's conduct, the circumstances, and the location associated with Cuenca's crimes. Additionally, despite concluding that Cuenca "had a duty to the public to safeguard students," the ALJ determined that the "record fail[ed] to meet the statutory

[1] Section 112.3173(2)(a), Florida Statutes (2012), provides as follows:
> (2) DEFINITIONS.—As used in this section, unless the context otherwise requires, the term:
> (a) "Conviction" and "convicted" mean an adjudication of guilt by a court of competent jurisdiction; a plea of guilty or of nolo contendere; a jury verdict of guilty when adjudication of guilt is withheld and the accused is placed on probation; or a conviction by the Senate of an impeachable offense.

6

requirement and demonstrate any nexus between the crimes charged against [Cuenca] and his duties as a coach because no factual basis was established . . . between the offenses committed and [Cuenca's] position as a coach." In reaching its conclusions, the ALJ found persuasive and relied on Rivera v. Board of Trustees of the City of Tampa's General Employment Retirement Fund, 189 So. 3d 207 (Fla. 2d DCA 2016).

Cuenca and the State Board did not file exceptions to the ALJ's recommended order. The matter then went before the State Board for final agency action. In its final order, the State Board adopted the ALJ's factual findings and rejected a portion of the ALJ's conclusions of law, including that the State Board failed to establish the requirements for forfeiture under section 112.3173(2)(e)6., and therefore, Cuenca had not forfeited his FRS benefits. The State Board also found that the ALJ's reliance on Rivera was misplaced, and included the following additional conclusions of law:

> 50. School teachers and coaches occupy a unique position with respect to minors, as they act in loco parentis to the students and players that they teach or coach. . . . Thus, [Cuenca], as a basketball coach acting in loco parentis, was an authority figure who had ample opportunities to engage in inappropriate contact with the students he coached because of his public position.
> . . . .
> 59. In this matter, [Cuenca] by virtue of his public employment exercised a position of authority over the minor victim he taught and coached. . . .
> 60. The evidence is sufficient to establish a nexus between the offense(s) to which [Cuenca] pled and [Cuenca's] public employment.

7

As such, the requirements of Section 112.3173(2)(e)6., Florida Statutes, are satisfied, and [Cuenca's] rights and benefits under the FRS Investment Plan must be forfeited.

Cuenca's appeal of the final agency order followed. See § 120.68(1)(a), Fla. Stat. (2017) ("A party who is adversely affected by final agency action is entitled to judicial review.").

## ANALYSIS

Cuenca contends that the State Board erred by concluding in its final agency order that Cuenca forfeited his FRS retirement benefits under the catch-all forfeiture provision set forth in section 112.3173(2)(e)6. As will be discussed fully below, we find no error.

Judicial review of the State Board's final agency action is governed by section 120.68 of Florida's Administrative Procedure Act. See Bollone v. Dep't of Mgmt. Servs., Div. of Ret., 100 So. 3d 1276, 1279 (Fla. 1st DCA 2012); Simcox v. City of Hollywood Police Officers' Ret. Sys., 988 So. 2d 731, 732 (Fla. 4th DCA 2008). The State Board's final agency action may be set aside "only upon a finding that it is not supported by substantial competent evidence in the record or that there are material errors in procedure, incorrect interpretations of law, or an abuse of discretion." Hames v. City of Miami Firefighters' & Police Officers' Tr., 980 So. 2d 1112, 1114 (Fla. 3d DCA 2008) (quoting Waters v. Dep't of Health, Bd. of Med., 962 So. 2d 1011 (Fla. 3d DCA 2007)); see also § 120.68(7), Fla. Stat.

8

(2017).  Further, "an agency's interpretation of the statutes that it is charged with administering is entitled to deference unless the agency's interpretation is clearly erroneous."  Bollone, 100 So. 3d at 1279.

A public employee's forfeiture of rights and benefits under a public retirement system is governed by article II, section 8(d) of the Florida Constitution and section 112.3173 of the Florida Statutes.  Article II, section 8(d) provides that "[a]ny public officer or employee who is convicted of a felony involving a breach of public trust shall be subject to forfeiture of rights and privileges under a public retirement system or pension plan in such manner as may be provided by law."  To implement this provision, the Florida Legislature enacted section 112.3173, which provides, in part, as follows:

> (3)    FORFEITURE.—Any public officer or employee who is convicted of a **specified offense** committed prior to retirement . . . shall forfeit all rights and benefits under any public retirement system of which he or she is a member, except for the return of his or her accumulated contributions as of the date of termination.

§ 112.3173(3) (emphasis added).  The term "specified offense" is defined in section 112.3173(2)(e) and, as pertinent in this case, includes the following, which is referred to as the "catch-all" forfeiture provision:

> 6.  The committing of any felony by a public officer or employee who, willfully and with intent to defraud the public or the public agency for which the public officer or employee acts or in which he or she is employed of the right to receive the faithful performance of his or her duty as a public officer or employee, realizes or obtains, or attempts to realize or obtain, a profit, gain, or advantage for himself or

9

herself or for some other person through the use or attempted use of the power, rights, privileges, duties, or position of his or her public office or employment position[.]

§ 112.3173(2)(e)6.

As explained by the First District Court of Appeal in Bollone, 100 So. 3d at 1280-81:

In order to constitute a "specified offense" under section 112.3173(2)(e)6., the criminal acts must be: (a) a felony; (b) committed by a public employee; (c) done willfully and with intent to defraud the public or the employee's public employer of the right to receive the faithful performance of the employee's duty; (d) done to obtain a profit, gain or advantage for the employee or some other person; and (e) done through the use or attempted use of the power, rights, privileges, duties, or position of [the employee's] employment.

This determination is based on the "**conduct of the public [employee], not by the elements of the crime for which the [public employee] was convicted**." Id. at 1280 (emphasis added).

The evidence presented at the formal hearing satisfied each of the elements set forth in Bollone. The criminal act was: (a) a felony; (b) committed by Cuenca, who was a public employee with MDCPS; (c) done willfully and with the intent to defraud Cuenca's public employer—MDCPS—of the right to receive the faithful performance of his duties; (d) done to obtain a gain or advantage for himself— sexual gratification; and (e) done through the use of his power, rights, privileges, duties or position as a coach and/or teacher for MDCPS.

Contrary to Cuenca's argument, the State Board correctly rejected several of

10

the ALJ's conclusions of law, including the ALJ's finding that there was no nexus between the criminal acts and Cuenca's public employment with MDCPS. The evidence presented at the formal hearing clearly established that Cuenca was employed by MDCPS as a teacher and/or basketball coach. As a result of his public employment with MDCPS, Cuenca was given access to the students he taught and/or coached, and as a teacher and/or coach, Cuenca exercised a position of authority over these students. Both the students and their parents expected that while the students were in Cuenca's care and under his supervision, he would protect, not abuse the students or engage in inappropriate conduct with them. Instead, while entrusted with the care and supervision of students, Cuenca chose to engage in inappropriate conduct with students he coached, including D.F. Cuenca called D.F. into a classroom or area of the school where nobody was present. Cuenca then asked D.F. to show him his penis under the guise of checking for what he called a "virgin line." Because Cuenca had repeatedly asked D.F. to show him his penis, D.F. finally acquiesced and lowered his shorts, exposing his penis. Cuenca then attempted to touch D.F.'s genitals, but D.F. was able to slap Cuenca's hand away. Based on the evidence presented, the necessary nexus was clearly established. Thus, the State Board correctly concluded in its final agency order that Cuenca forfeited his FRS Investment Plan benefits under the catch-all forfeiture provision, section 112.3173(2)(e)6.

Although we have determined that the State Board correctly concluded that Cuenca forfeited his retirement benefits, we briefly address Cuenca's misplaced reliance on Rivera. The Board of Trustees of the City of Tampa's General Employment Retirement Fund ("Board") found that based on the evidence presented: Rivera worked at the City of Tampa ("City") Wastewater Department; while working for the City, Rivera used a set of keys issued to him by the City to access the wastewater pump stations; he was arrested at one of the City's wastewater pump stations after he was found on the premises; a subsequent investigation revealed that Rivera had also taken other minors to the wastewater pump stations to engage in unlawful sexual acts with several minor victims; and Rivera pled guilty to: two counts of lewd and lascivious battery of a victim age twelve to fifteen; one count of unlawful sexual activity with minors age sixteen to seventeen; and four counts of lewd and lascivious molestation of a victim age twelve to fifteen. Id.

Thus, the Board concluded that because: Rivera was convicted of specified offenses as defined in section 112.3173(2)(e)7.; Rivera utilized the keys issued by the City to enter the City's property to commit the specified offenses; and Rivera committed the offenses through the use or attempted use of the power, rights, privileges, duties, or position of his public employment, Rivera had forfeited his retirement benefits. Id. Rivera appealed the forfeiture order.

12

On appeal, the Second District Court of Appeal concluded that, although the evidence established that Rivera was a public employee and he committed the charged offenses, the Board failed to establish that there was a nexus between Rivera's position as a City employee and his commission of the offenses. This finding was based on the Second District's finding that the Board had failed to introduce a transcript of the plea colloquy (which would have included either a statement of the factual basis for the plea or a stipulation of the factual basis for the plea), and that the **only** evidence presented was double or triple hearsay. Id. at 213. Although "[h]earsay evidence may be used for the purpose of supplementing or explaining other evidence, [] it shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions." § 120.57(1)(c), Fla. Stat. (2017) Thus, the Second District concluded that the forfeiture order was not supported by competent, substantial evidence, and reversed the Board's forfeiture order. Rivera, 189 So. 3d at 213.

Rivera, however, is factually distinguishable from the instant case. First, the minor victims of the crimes Rivera pled guilty to were not in any manner related to his position at the City's Wastewater Department. Rivera's position did not involve safeguarding minors and did not place him in any position of authority over minors. In contrast, Cuenca's position as a basketball coach at a Miami-Dade County middle school and high school put him in a position of authority over the

13

students, including D.F. who he coached at middle school and high school. Second, unlike in <u>Rivera</u>, where the required nexus was established solely through hearsay, that was not the case here. The plea colloquy constitutes a statement against interest and is non-hearsay evidence. Additionally, during the plea colloquy, Cuenca stipulated that there was a factual basis for the plea and that the charging documents and arrest forms provided a prima facie basis for the plea, and the trial court additionally found that there was a prima facie basis for the negotiated plea. Moreover, at Cuenca's formal hearing, Cuenca testified and he admitted that he had coached D.F. at a Miami-Dade County public school and that he worked at a Miami-Dade County public school as a coach at the time he committed the offense against D.F. Thus, the nexus between Cuenca's position as a public school coach and the charged offenses was establish by a combination of both hearsay and non-hearsay evidence. We, therefore, conclude that <u>Rivera</u> is distinguishable from the instant case and Cuenca's reliance on <u>Rivera</u> is therefore misplaced.

## **CONCLUSION**

Based on the above analysis, we conclude that the State Board's determination that Cuenca forfeited his rights and benefits under the FRS Investment Plan, except for the portion of his accumulated contributions, is supported by competent, substantial evidence. We, therefore, affirm the order

14

under review.

The remaining arguments raised by Cuenca do not merit discussion.

Affirmed.