# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 5D2022-3029
LT Case No. UNKNOWN

_____

KIM BRADDOCK,

    Appellant,

    v.

CITY OF PORT ORANGE PENSION
FUND'S BOARD OF TRUSTEES,

    Appellee.

_____

Administrative appeal from the City of Port Orange Pension
Fund's Board of Trustees.
Lt. Warren Carman, Chairman.

Susanne D. McCabe and Allison J. McCabe, of McCabe Law
Firm, Port Orange, for Appellant.

Kenneth R. Harrison, Sr., Robert A. Sugarman, Madison Levine,
and Pedro Herrera, of Sugarman, Susskind, Braswell, & Herrera
P.A., Coral Gables, for Appellee.


October 2, 2024


MAKAR, J.

    Forfeiture of a retiree's pension benefits, which is a harsh
exaction of a property right, is a drastic and extremely limited

remedy under longstanding Florida law, which mandates that forfeiture statutes be strictly construed in favor of pension owners. Because the forfeiture of pension benefits in this case is based on an erroneous and overly expansive interpretation of a so-called "catch-all" provision in Florida's narrowly drawn forfeiture statute, reversal is required.

## I.

Officer Steven Michael Braddock worked for the City of Port Orange, Florida, for almost 24 years. He retired in 2018 and began receiving his pension benefits. His ex-wife, Kim Braddock, began receiving her share (25%) of these benefits as well pursuant to a final court order in the couple's dissolution proceeding. They had been married for almost twenty years when they divorced in 2015.

A few years after his retirement, Braddock pled nolo contendere to one count of exploitation of an elderly person, his mother, and one count of uttering forged documents. Two of the documents, a power of attorney and a warranty deed, were notarized by the City's records clerk prior to Braddock's retirement. The City's records clerk played no role in the crime, nor did his ex-wife Kim, who is termed an "innocent spouse" because she was not involved in the crimes and had divorced Braddock years earlier.[1] Braddock, who had no prior criminal record, was placed on probation for five years and ordered to pay restitution to his mother's estate, which was done.[2]

The City learned of Braddock's nolo plea and initiated forfeiture proceedings to deprive him, and by extension his ex-wife, Kim, of pension benefits; it also sought return of pension benefits already paid. The sole legal basis for forfeiture was that Braddock used the free notary services of the City's records clerk. The City's

---

[1] Braddock's then-current wife, Mary Louise Braddock, was part of the scheme to defraud and was charged and pled nolo contendere as well.

[2] As part of a civil settlement with his brother, Braddock waived any interest in his mother's estate, which in turn waived the payment of restitution.

legal position was that Braddock's use of the notarization service fell within the broadly worded but narrowly drawn "catch-all" category of Florida's forfeiture statute, which is limited to an employee's misuse of "power, rights, privileges, duties, or position" that constitutes a breach of the public trust. This appeal, by Kim Braddock, challenges the City's order of forfeiture.

## II.

The legal authority for a forfeiture action is grounded in the state constitution, which provides: "Any public officer or employee who is convicted of *a felony involving a breach of public trust* shall be subject to forfeiture of rights and privileges under a public retirement system or pension plan in such manner as may be *provided by law.*" Art. II, § 8(d), Fla. Const. (emphases added). As highlighted, only felonies that involve a "breach of public trust" are actionable and the legislature is empowered to provide "by law" the manner in which forfeitures occur. Section 112.3173 of the Florida Statutes implements this constitutional provision. It allows for forfeiture upon proof of one of seven "specified offenses" that are narrowly limited to felonies involving serious offenses against a public entity or involving an abuse of authority amounting to a misuse of public office. *See* § 112.3173(2)(e), Fla. Stat. (2024).

The exceptionally narrow scope of these "specified offenses" stands in stark contrast to the *hundreds* of criminal offenses that exist in Florida. None of these hundreds of crimes—from murder to petit theft—provide the basis for forfeiture absent the statutorily required proof that the crime is a "specified offense." It is not enough to have committed a crime for forfeiture to occur; the crime must be a felony and involve a misuse of authority constituting a breach of the public trust.

A review of the statute confirms this point. The first five of the seven "specified offenses" are:

1.  The committing, aiding, or abetting of an *embezzlement of public funds*;

3

2. The committing, aiding, or abetting of any *theft by a public officer or employee from his or her employer*;

3. *Bribery* in connection with the employment of a public officer or employee;

4. Any felony specified in chapter 838 [*Bribery; Misuse of Public Office*], except ss. 838.15 and 838.16 [both dealing with commercial bribery];

5. The committing of an *impeachable offense*[.]

*Id*. § 112.3173(2)(e)1.–5. (emphases added). Each of the highlighted offenses involve actions that (a) deprived a public employer of funds or property, (b) constituted bribery connected to public employment, or (c) are impeachable offenses. None apply here. Braddock was not convicted of embezzlement of public funds, of theft from the City, or of a bribery offense; and his position as a police officer is not subject to impeachment. *See* Art. III, § 17, Fla. Const. For these reasons, the first five categories do not apply to him.

A seventh category was added in 2008 and includes the felonies of lewd or lascivious conduct against a victim under 16 years old and sexual battery of a victim under 18 years old. In either case, the offenses must be done "through the use or attempted use of power, rights, privileges, duties, or position of his or her public office or employment position." § 112.3173(2)(e)7., Fla. Stat. This category is also inapplicable to Braddock. Like the first five specified offenses, however, this category requires a nexus showing that the sex offense committed arose from a breach of public trust, i.e., that the public employee used the "power, rights, privileges, duties, or position" of his employment for the sex crime's commission.

The sixth and remaining specified offense in the statute, and the one the City relies on in the forfeiture proceeding against Braddock, is dubbed a "catch-all" and states:

6. The committing of any *felony* by a public officer or employee who, *willfully and with intent to defraud the public or the public agency* for which the public officer or employee acts or in which he

4

or she is employed *of the right to receive the faithful performance of his or her duty* as a public officer or employee, realizes or obtains, or attempts to realize or obtain, a profit, gain, or advantage for himself or herself or for some other person through the use or attempted use of the power, rights, privileges, duties, or position of his or her public office or employment position[.]

*Id.* § 112.3173(2)(e)6. (emphases added). This definitional sentence, consisting of 105 words, has a lot to unpack to understand its limited scope.

Before doing so, it is important to emphasize that courts must strictly construe a forfeiture statute, such as this one, in "favor of the party against whom the penalty is sought to be imposed." *Cabrera v. Dep't of Nat. Res.,* 478 So. 2d 454, 455–56 (Fla. 3d DCA 1985). The reasons are many. As our supreme court has held, forfeitures are deemed "harsh exactions" that "are not favored either in law or equity." *Dep't of Law Enf. v. Real Prop.*, 588 So. 2d 957, 961 (Fla. 1991) ("[T]his Court has long followed a policy that it must strictly construe forfeiture statutes."); *Cabrera*, 478 So. 2d at 455 ("Forfeiture is considered an extraordinarily harsh penalty."); *Williams v. Christian*, 335 So. 2d 358, 361 (Fla. 1st DCA 1976) ("No citation of authority is required to support the rule that forfeitures are not favored in law. They are considered harsh exactions, odious, and to be avoided when possible."). The requirements of due process apply because retirees have property rights in their pensions that are constitutionally protected. *See Town of Oakland v. Mercer*, 851 So. 2d 266, 269 (Fla. 5th DCA 2003) ("Due process mandates that the provisions of the forfeiture act be strictly interpreted in favor of the persons being deprived of their property."). Finally, "in uncertain cases, strict construction means that the courts will construe ambiguous statutes, or even clear forfeiture provisions resting on uncertain authority, against any loss and in favor of an owner's retention of property." *Chuck v. City of Homestead Police Dep't*, 888 So. 2d 736, 744 (Fla. 3d DCA 2004); *Christian*, 335 So. 2d at 361 ("Statutes imposing forfeiture will be strictly construed in a manner such as to avoid the

5

forfeiture and will be liberally construed so as to avoid and relieve from forfeiture.").

Turning back to the "catch-all" provision that has five elements.[3] It applies to conduct that

> (1) constitutes a felony, (2) is committed by a public employee, (3) is done willfully and with intent to defraud the public or the public employer of its right to the employee's faithful performance, (4) is done to obtain a profit, gain, or advantage for the employee or some other person, and (5) is done through the use or attempted use of the power, rights, privileges, duties, or position of the employee's employment.

*Houston v. City of Tampa Firefighters & Police Officers' Pension Fund Bd. of Trs.*, 297 So. 3d 664, 666 (Fla. 2d DCA 2020) (quoting another source). The City was required to establish each of the statutory elements to prove a sufficient "nexus" between Braddock's offenses and his position as a City police officer. *See id.*; *see also Rivera v. Bd. of Trs. of City of Tampa's Gen. Emp. Ret. Fund*, 189 So. 3d 207, 210–11 (Fla. 2d DCA 2016). "The nexus determination focuses upon the conduct of the public employee." *Houston,* 297 So. 3d at 666. Any interpretative doubt must be construed in favor of Braddock.

Elements (1), (2), and (4) are satisfied as to Braddock. He committed a felony[4] from which he obtained a profit, gain, or advantage, in this case the attempt to take advantage of his mom. Braddock also stipulated to element (3), though it is unclear how

---

[3] *Houston v. City of Tampa Firefighters & Police Officers' Pension Fund Bd. of Trs.*, 303 So. 3d 233, 237 (Fla. 2d DCA 2020) ("Subsection (6) in the definition of 'specified offense' is sometimes referred to as the definition's catch-all provision because it does not identify a specific crime but rather reaches 'any felony' bearing certain characteristics.").

[4] The forfeiture statute provides that pleading nolo contendere constitutes a conviction for a felony. § 112.3173(2)(a), Fla. Stat. (2024).

6

his conduct willfully defrauded the public or his employer of the "faithful performance of his . . . duty" in his role as a police officer. No allegation is made that Braddock had a duty as a police officer that he violated; he was only charged with *using* the City's free notary service. Nonetheless, the stipulation controls.

What's left is the last element: whether use of the free notary service was a willful attempt to defraud the City of the faithful performance of his police officer position that was done "through the use or attempted use of the power, rights, privileges, duties, or position" of the employee's employment. The dispositive legal question is whether the use of the City's free notary service— something any City employee could have done—is the type of misuse of "power, rights, privileges, duties, or position" that constitutes a breach of the public trust? It is not, for a number of reasons.

First, the City erroneously interpreted the language of the "catch-all" provision in concluding that a sufficient nexus existed between Braddock's crimes and his position as a City police officer. *See Houston*, 297 So. 3d at 668 (finding the review of a forfeiture order includes whether the Board "has erroneously interpreted a provision of law and a correct interpretation compels a particular action" (quoting § 120.68(7)(d), Fla. Stat. (2024))). It is not enough for Braddock to have committed a felony when he was a public employee, "nor is it enough that the crime bears some relationship to his public duties." *Houston*, 297 So. 3d at 668 (quoting another source). Braddock committed a crime when he was a police officer, but is there a legally sufficient nexus between the crime and his exercise of official power, rights, privileges, duties, or position?

The City failed to meet its burden to prove that a sufficient nexus existed between Braddock's position as a City police officer and his offenses. *See Houston*, 297 So. 3d at 670 ("It is the Board's burden to establish the nexus between Mr. Houston's position as an employee of the City of Tampa Police Department and his commission of the offense to which he pleaded guilty."). According to the City, the nexus was that Braddock "was introduced to [the City's records clerk] through his position as a police officer, approached her and utilized her notary services while she was on duty at [the police] station using a notary commission and seal

7

paid for by the City." That's it – Braddock used the City's notary services that any City employee could have utilized. To be clear, the notary merely provided authorized notary services. No finding was made that she was privy to Braddock's plan to defraud or that she was pressured or influenced in any way to provide notarization. As a City clerk, she merely notarized the paperwork that Braddock provided her as she would for any other City employee whether they were police officers or not; members of the public could also obtain notarization from her during normal City business hours. In short, Braddock did not exercise any official power, rights, privileges, duties, or position of his employment in using free notarization services, such that no nexus existed.

Second, that subsection 112.3173(2)(e)6. has been dubbed a "catch-all" doesn't mean it catches all. To the contrary, it applies to only those felonies that meet its narrow terms; it is not an open-ended invitation to revoke pensions for conduct other than breaches of the public trust through misuse of an employee's official power, rights, privileges, duties, or position. The limited reach of the specified offenses for forfeiture is reflected in the fact that murder, sexual assault, battery, and hundreds of other serious crimes are not a per se basis for forfeiture. That's because the constitution requires that forfeiture must arise from a "felony involving a breach of public trust." A city employee who murders his mother cannot have his pension forfeited on that basis; it's a hideous act, and the public should be enraged, but, absent conduct that he used his official position in a way that breached the public trust, no basis for forfeiture exists. Here, the City's overbroad interpretation of the "catch-all" provision is contrary to the forfeiture statute's narrow, and strictly construed, scope.

Third, courts make clear that the "catch-all" provision requires a clear and close connection between the misuse of the employee's position or the employer's resources and the specified offense before concluding that a sufficiently egregious breach of public trust occurred. For example, in *Cuenca v. State Board of Administration*, 259 So. 3d 253, 259 (Fla. 3d DCA 2018), a clear nexus existed where a public schoolteacher/coach used his position of authority to sexually abuse students; he could not have committed the crimes without access to students. Likewise, in *Jenne v. Florida Department of Management Services, Division of*

8

*Retirement*, 36 So. 3d 738, 740 (Fla. 1st DCA 2010), a sheriff's use of his official position and powers to award contracts to and extract payments from persons doing business with the sheriff's office violated the catch-all provision; again, a direct nexus existed. In *Newmans v. Division of Retirement*, 701 So. 2d 573, 577 (Fla. 1st DCA 1997), a sheriff provided "information or 'tip-offs' to drug traffickers regarding confidential investigations, aircraft flyovers, and other law enforcement efforts"; doing so was "inseparably intertwined with his position as Sheriff." The police officer in *Simcox v. City of Hollywood Police Officers' Retirement System*, 988 So. 2d 731, 734 (Fla. 4th DCA 2008), used his position and expertise gained as an officer to effectuate a drug smuggling operation and to protect drug deliverymen. In *DeSoto v. Hialeah Police Pension Fund Board of Trustees*, 870 So. 2d 844, 846 (Fla. 3d DCA 2003), a police sergeant coordinated and participated in robberies using his official position, inside information, and city resources (mace/handcuffs), thereby establishing the "statutory requirement of a nexus between the crimes charged against the public officer and his or her duties and/or position." Even more examples exist, but the point is that a clear nexus must be proven; it is simply not "enough that the crime bears some relationship" to public duties. *Houston*, 297 So. 3d at 668.

A case illustrating the lack of a sufficient nexus is instructive. In *Houston*, the city claimed that a police officer "used his position as a Tampa police officer and detective to cultivate his relationship with Rita Girven," an alleged confidential informant whom the officer paid to get information used in a fraudulent scheme. 297 So. 3d at 670. In rejecting that a nexus had been shown, the Second District noted the absence of any evidence to show that the police officer did anything wrong under Tampa's police department guidelines. *Id.* Nor was there any nexus established between the police officer's position and his use of funds fraudulently obtained from third parties. *Id.* The police officer did not use police department resources, such as its personal identification information system, to assist in the fraudulent scheme and no evidence showed that "department funds were used improperly by Mr. Houston to pay Ms. Girven for information." *Id.* Nor was there any evidence that the officer "used the expertise he gained as a law enforcement officer to facilitate the scheme." *Id.* at 670–71. As such, the record failed "to provide a link between Mr. Houston's

9

conduct, as an employee of the Tampa Police Department, and the crime for which he was convicted." *Id.* at 670.

As in *Houston*, here the record fails to show the requisite nexus between Braddock's conduct as a police officer and the attempt to defraud his mother. Braddock never used his position as a police officer as a part of the scheme. He violated no police department guidelines. He did not take or use any City funds or tangible property. He did not coerce any City employee or otherwise use his position or expertise gained as a police officer. His position as a police officer was simply not a factor, having no connection to the charges against him.

The City relies on the First District's decision in *Bollone v. Department of Management Services, Division of Retirement*, 100 So. 3d 1276, 1281 (Fla. 1st DCA 2012), which is distinguishable. In that case, a community college instructor was found guilty of possessing child pornography on the college-issued computer in his private office; his pension was subsequently forfeited on that basis. *Id.* Unlike the situation in *Bollone*, however, Braddock was not issued a work computer on which he committed felonies. If Braddock used a City-issued computer to *directly* commit a crime thereon, such as possession of child pornography, *Bollone* would be persuasive authority to support forfeiture; no such nexus is shown here. In addition, the instructor in *Bollone* was on notice of the college's policies regarding computer usage. He nonetheless acted in violation of those policies. Here, Braddock did not violate any policies on use of the free notarization services—because none existed. *Bollone* simply doesn't apply.

Finally, it is unclear what limiting principle applies if the catch-all provision is expanded to include the use of free notary services available to all City employees. What if a City employee, planning to murder his mother, puts poison in a bottle and fills it from a workplace water fountain provided by the City. Has a sufficient nexus been met? What if an employee used electricity from a City office to charge his personal cellphone that he later used to illegally surveil a neighbor or make scam calls to defraud others? Same question. In these situations, the statutory line to be drawn must be clear and strictly construed to avoid a forfeiture, and liberally construed in the employee's favor. *See Chuck*, 888 So.

10

2d at 744; *see also Christian*, 335 So. 2d at 361. In an unclear or close case of statutory analysis, such as this one, the interpretive edge goes to the employee, Braddock.

## III.

In conclusion, the de minimis act of using the City's free notarization service in this case is too attenuated under the "catch-all" provision to be a misuse of a "power, rights, privilege, duties, or position" of employment that breached the public trust. And no legally sufficient nexus exists between the free notarization service and a misuse of a power, right, privilege, or duty in Braddock's position as a police officer. Because the "catch-all" provision must be strictly construed in a way that avoids forfeiture, reversal is required. The City's final order of forfeiture is vacated with directions that Kim Braddock's court-ordered right to receive her share of the pension shall be fully restored, including without limitation the payment of any pension benefits withheld and the nullification of any requirement that pension benefits already paid shall be returned.

REVERSED and REMANDED with instructions.

MACIVER, J., concurs.
SOUD, J., dissents with opinion.

———————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

———————————

11

SOUD, J.

I respectfully dissent.

The People of the State of Florida, in their sovereign and righteous might, have declared that public officials who abuse the public trust shall forfeit certain compensation due them. *See* Art. II, § 8(d), Fla. Const. As a result, I would affirm—even in this case where equitable considerations favoring the innocent former spouse of the public official entice otherwise. Such considerations simply do not release me from the requirements of applicable Florida Statutes, duly enacted to fulfill this important state constitutional mandate.

I.

Appellant Kim Braddock and police Sergeant Steven Michael Braddock divorced in 2015. In their marital settlement agreement, Kim Braddock received 25% of Steven Braddock's pension, which he earned during his career with the City of Port Orange Police Department.

Years later, in 2021, Steven Braddock pleaded no contest to two felony charges: (i) exploitation of an elderly person or disabled adult and (ii) uttering a forgery. The charges stemmed from Braddock forging a durable power of attorney and a warranty deed and having each illegally notarized. The warranty deed was purportedly signed by Steven Braddock's parents granting certain real property to him. The power of attorney was purportedly signed by his mother, granting him and his then-wife (not Kim Braddock) the power to act on his mother's behalf.

Importantly, these documents were "fraudulently" and "illegally" notarized *by the Port Orange Police Department's records clerk*, who was on duty at the time she notarized them. While Steven Braddock signed the power of attorney and warranty deed in the police records clerk's presence, neither his parent(s) nor the witnesses to either document were present before the notary. Thus, the documents were unlawfully notarized. *See* §

12

117.107(9), Fla. Stat. (2016). Steven Braddock filed the warranty deed with the local clerk of court and presented the power of attorney to a financial institution.

As a result, the Board of Trustees of the City of Port Orange Police Pension Fund ultimately forfeited Steven Braddock's pension pursuant to section 112.3173(3), Florida Statutes (2022), concluding that he "used his position as a POPD police officer to engage [the police department records clerk] to improperly and illegally notarize" the documents. The Board further determined that Kim Braddock did not have a right to receive partial benefit payments because she did not have an independent vested property right to her 25% share of the pension. This appeal by Kim Braddock followed. Notably, Steven Braddock did not appeal the Board's decision.

## II.

The majority reverses the forfeiture of the pension benefits at issue because it concludes that Steven Braddock's crimes do not constitute a qualifying specified offense under Florida law. I disagree with my respected colleagues.

The Florida Constitution provides:

> A public office is a public trust. The people shall have the right to secure and sustain that trust against abuse. To assure this right:
>
> . . . .
>
> Any public officer or employee who is convicted of a felony involving a breach of public trust shall be subject to forfeiture of rights and privileges under a public retirement system or pension plan in such manner as may be provided by law.

Art. II, § 8(d), Fla. Const. The Florida Legislature implemented this protection by enacting section 112.3173, Florida Statutes:

> Any public officer or employee who is convicted of a *specified offense* committed prior to retirement . . .

shall forfeit all rights and benefits under any public retirement system of which he or she is a member, except for the return of his or her accumulated contributions as of the date of termination.

§ 112.3173(3), Fla. Stat. (emphasis added).

Section 112.3173(2)(e) identifies these "specified offense[s]," including embezzlement of public funds, theft from one's employer, bribery, a felony specified in chapter 838 (bribery; misuse of public office), an impeachable offense, and identified sexual offenses against persons under sixteen or eighteen years old. *See* § 112.3173(2)(e)1.–5. & 7., Fla. Stat. Pertinent here, section 112.3173(2)(e)6., the section's "catch-all" provision, *see Simcox v. City of Hollywood Police Officers' Ret. Sys.*, 988 So. 2d 731, 733 (Fla. 4th DCA 2008), further defines a specified offense as:

> The committing of any felony by a public officer or employee who, *willfully and with intent to defraud the public or the public agency* for which the public officer or employee acts or in which he or she is employed *of the right to receive the faithful performance of his or her duty* as a public officer or employee, realizes or obtains, or attempts to realize or obtain, a profit, gain, or advantage for himself or herself or for some other person *through the use or attempted use of the power, rights, privileges, duties, or position of his or her public office or employment position*;

§ 112.3173(2)(e)6., Fla. Stat. (emphasis added). It is this provision that the Board determined compelled forfeiture of Steven Braddock's pension.

## A.

Initially, I note that in resolving this case, the majority places considerable emphasis on the notion "that courts must strictly construe a forfeiture statute, such as this one, in favor of the party against whom the penalty is sought to be imposed." Yet, such a notion is unnecessary here because the majority's decision does not turn on our interpretation of the language of the statute. Rather,

14

the majority arrives at its decision by applying the statute to the record facts before us in deciding whether Steven Braddock's convictions qualify as "specified offense[s]."

Further, while the concept of "strictly construing" forfeiture statutes does exist in certain Florida precedent cited by the majority[1] (to the extent they reach the issues here), it is worthy of reconsideration. "A text should not be construed strictly, and it should not be construed leniently; it should be construed *reasonably*, to contain all that it *fairly* means." Antonin Scalia, *A Matter of Interpretation: Federal Courts and the Law* 23 (2018 ed.) (emphasis added); *see also State Farm Fla. Ins. Co. v. James*, 374 So. 3d 934, 939 (Fla. 5th DCA 2023) (Soud, J., specially concurring) (same). In the context of "strict construction" being applied to statutes in derogation of common law, the concept has been rightly described as a "relic." *See Demase v. State Farm Fla. Ins. Co.*, 351 So. 3d 136, 139 (Fla. 5th DCA 2022) (Sasso, J., concurring specially) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 318 (2012)).

This presumption—like other judicially created presumptions superimposed upon Florida courts' state constitutional responsibility to reasonably interpret Florida Statutes by the employment of known and dependable canons of construction—is problematic.

> How "narrow" is the narrow construction that certain types of statutes are to be accorded . . . ? There [is] no answer to [this question], which is why . . . artificial rules increase the unpredictability, if not the arbitrariness, of judicial decisions. . . .
>
> But whether these dice-loading rules are good or bad, there is also the question of where [Florida] courts get the authority to impose them. Can we really just decree that we will interpret the laws

---

[1] *See Dep't of Law Enf. v. Real Prop.*, 588 So. 2d 957, 961 (Fla. 1991); *Town of Oakland v. Mercer*, 851 So. 2d 266, 269 (Fla. 5th DCA 2003).

15

that [the Florida Legislature] passes to mean less
or more than what they fairly say? I doubt it.

Scalia, *A Matter of Interpretation: Federal Courts and the Law* at
28–29.

Indeed.

### B.

Turning to Steven Braddock's convictions, it is his conduct
that defines whether his crimes are "specified offenses" under
subsection (2)(e)6., not the elements of the crimes to which he
pleaded. *See Bollone v. Dep't of Mgmt. Servs., Div. of Ret.*, 100 So.
3d 1276, 1280 (Fla. 1st DCA 2012) (citing *Jenne v. State, Dep't of
Mgmt. Servs., Div. of Ret.,* 36 So. 3d 738, 741–43 (Fla. 1st DCA
2010)). "Thus, '*any felony* could qualify as a specified offense, so
long as the remaining conditions in the statute have been met.'"
*Id.* (emphasis added) (quoting *Jenne*, 36 So. 3d at 742).

Exploitation of an elderly person or disabled adult and
uttering a forgery, to which Steven Braddock pleaded no contest,
are not—in and of themselves—specified offenses. Therefore, "the
statutory conditions of the 'catch-all' category . . . must be
examined and applied to the conduct of the official or the employee
in making this determination." *Id.* (citing *Jenne*, 36 So. 3d at 742).

For Steven Braddock's crime(s) to constitute a specified
offense under section 112.3173(2)(e)6., the plain language of the
statute requires the criminal acts be: (1) a felony; (2) committed by
him while he was a public employee; (3) done willfully and with
intent to defraud the public or his public employer of the right to
receive the faithful performance of his duty; (4) for the purpose of
obtaining a profit, gain or advantage for himself or some other
person; and (5) carried out through the use or attempted use of the
power, rights, privileges, duties, or position of his employment. *See
id.* at 1280–81. I agree with the majority's determination that the
only element in dispute is the fifth and final element—whether
Steven Braddock carried out his conduct through the use of "the
power, rights, privileges, duties, or position of his employment."
The first four elements are satisfied.

16

There is sufficient evidence in the record before us to support the Board's conclusion that Steven Braddock misused his position at the Port Orange Police Department as a means to accomplish his criminal intention.

The majority repeatedly characterizes the individual who fraudulently notarized the deed and power of attorney as "the City's records clerk." This description, while not inaccurate, stops short of the fact that determines my opinion in this case. The notary was not just any city employee—she was hired by the Port Orange Police Department as the police records clerk in the very department in which Steven Braddock was a sergeant. To achieve his ends, Steven Braddock utilized the notary license of the police department's records clerk—whom he knew only through his employment—relying upon his friendship with her and her subordinate position within the police department to have the forged deed and power of attorney "fraudulently" and "illegally" notarized.

Could members of the public (who could utilize the notary services for a nominal fee) avail themselves of these same notary services for the *fraudulent* and *illegal* notarization of documents? Conversely, could Steven Braddock go to any other Florida notary not within his police department and have the forged warranty deed and power of attorney unlawfully notarized *without the principals and witnesses to the documents present* before the notary? There is every reason in this record to answer both questions in the negative.

But for his utilization of his police department records clerk's notary license, Steven Braddock would not have been able to have the forged warranty deed and power of attorney fraudulently and illegally notarized. Without these documents, Steven Braddock could not have carried out his criminal actions. By using the police department records clerk's services in this manner and to this end, Steven Braddock misused his position as a police sergeant in the Port Orange Police Department and, thereby, defrauded the agency and the public of the right to the faithful performance of his duty. As a result, as all elements necessary to qualify Steven Braddock's crimes as "specified offense[s]" exist under section

112.3173(3), Florida Statutes, the law requires forfeiture of his pension.

## C.

Kim Braddock further argues that, even if Steven Braddock's pension was rightfully forfeited, she should continue to receive her 25% share because she has a separate and independent vested property interest in her share of the pension. Here, too, her argument must fail.

Under Florida law, Steven Braddock himself did not possess an independent vested property interest in his pension. All rights to his pension that he earned during his tenure with the Port Orange Police Department were subject to the forfeiture requirements of Article II, section 8(d) of the Florida Constitution and section 112.3173, Florida Statutes. *See Busbee v. State, Div. of Ret.*, 685 So. 2d 914, 916 (Fla. 1st DCA 1996); *see also Hames v. City of Miami*, 479 F. Supp. 2d 1276, 1288 (S.D. Fla. 2007) ("[A]n employee has no vested property interest in the pension; it is always subject to the statutory forfeiture limitations."), *aff'd sub nom. Hames v. City of Miami, FL*, 281 F. App'x 853 (11th Cir. 2008).

As a result, the same must hold true for Kim Braddock. Simply stated, while Steven Braddock's pension was undeniably a marital asset rightly subject to equitable distribution, *see* § 61.075(6)(a)1.d., Fla. Stat. (2015),[2] any rights Kim Braddock obtained to a marital portion of his pension upon the dissolution of their marriage could be no greater than those rights Steven Braddock himself possessed. As such, Kim Braddock's interest to the 25% share of the pension was derivative of his rights and, likewise, subject to the forfeiture requirements of Florida law.

---

[2] *See also Bd. of Pension Trs. of City Gen. Emps. Pension Plan v. Vizcaino*, 635 So. 2d 1012, 1014 (Fla. 1st DCA 1994).

## III.

Accordingly, I would affirm the Board's final order of forfeiture.